UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| KATHLEEN ROCHE, D.C., individually and on behalf of others similarly situated, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 07-cv-302-JPG |
| TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY, TRAVELERS CASUALTY & SURETY COMPANY, and THE TRAVELERS INSURANCE COMPANY, | |
| Defendants. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant The Travelers Indemnity Company's Motion to Dismiss (Doc. 38). Plaintiff Kathleen Roche has responded (Doc. 45) and Defendant has replied (Doc. 50). Defendant has filed a Motion for a Hearing on the Motion to Dismiss (Doc. 47). The Court, having been fully informed by the parties's briefs, **DENIES** the Motion for Hearing. For the following reasons, the Court **GRANTS** the Motion to Dismiss.

### BACKGROUND

**I.      PPOs and Silent PPOs[1]**

Health insurance plans can be broadly divided into two large categories: indemnity plans (also referred to as "reimbursement" plans), and managed care plans. Indemnity plans

---

[1]The Court has drawn this background information from the operative Complaint, Senate and Congressional Reports on PPOs, and materials from the American Hospital Association and the American Medical Association.

1

reimburse the patient for his medical expenses regardless of who provides the service. Managed care plans, on the other hand, involve an arrangement between the insurer and a selected network of health care providers. Managed care plans offer patients significant financial incentives to use the providers in that network.

A Preferred Provider Organization (PPO) is a managed care technique that has risen in popularity in recent years. Parties to a typical PPO include a health care provider, a PPO network administrator, and various kinds of payors, that is, those companies or entities that are obligated to provide medical benefits to the provider's patients. Payors may be insurance carriers, health care service plans, employers, trusts, nonprofit health service plans, governmental units and the like.

Generally, health care providers sign a contract with PPO network administrators in which they agree to accept from PPO payors a rate discounted from their usual and customary rates as payment in full for services provided to the payor's beneficiaries. In exchange, the network administrators promise providers that the payors who join the PPO will pay the provider promptly and/or provide "steerage," that is, financial incentives to their beneficiaries to encourage the beneficiaries to choose PPO providers. The contract between the provider and the PPO network administrator is the "provider agreement." The contract between the PPO network administrator and the payor is the "payor agreement." The provider agreement may or may not delineate who can contract to be a PPO payor.

A silent PPO is a term of art for a kind of PPO abuse. Essentially, a silent PPO occurs when a payor receives a PPO discount to which he is not entitled. For example, suppose a patient with an indemnity insurance plan goes to a provider who is part of a PPO. By definition,

2

the patient with an indemnity insurance plan is not steered toward a provider, but is free to choose any provider he wishes. The patient typically pays a percentage of the total bill and his insurance pays the rest. In a silent PPO, after the patient pays his share of the bill and the provider submits the outstanding balance to the payor for payment, the payor notices that the provider is a member of a PPO. The payor then proceeds to pay the provider at the PPO discounted rate, instead of the usual and customary rate. If the payor and provider are both members of the PPO, this discount payment may constitute a breach of the PPO contract. If the payor is not a member of the PPO, but pays only the PPO rate, this discount payment may constitute fraud. The conduct at issue in this purported class action falls within the first silent PPO scenario.

**II.     Facts**

Plaintiff Kathleen Roche is a licenced healthcare provider who signed a provider agreement with First Health Group Corp. (First Health), thereby becoming a provider with the First Health PPO network. Defendant The Travelers Indemnity Company (TIC) signed a payor agreement with First Health, thereby becoming a payor with the First Health PPO network. Roche contends that the provider agreement and the payor agreement together constitute a contract between herself and TIC. One term of the payor contract is that TIC will "to the extent permitted under [Illinois] law, direct Claimants to Contract Providers." Another term of the payor agreement states, "TIC acknowledges that the status of Contract Providers may change for time to time, with or without notice, and the provider's status must be confirmed with the provider before medical services are obtained."

In 2003, Roche treated a patient, who was a covered claimant under a TIC worker's

compensation insurance policy, at her offices in St. Clair County, Illinois. The claimant sustained injuries in a covered occurrence, and was entitled to have TIC pay for his medical services. However, TIC had never established a Preferred Provider or Exclusive Provider program for its claimants or beneficiaries. Accordingly, neither TIC nor First Health referred the patient to use Roche's services. They did nothing to steer or direct the patient in any way to Roche, nor did TIC make any attempt to verify Roche's status as a PPO provider before Roche provided her services to the patient.

Roche submitted a bill for her usual and customary charges to TIC. TIC then submitted the bill to First Health for review. Upon determining that Roche was a First Health PPO provider, TIC tendered payment to Roche at the PPO discounted rate for the services provided, along with an explanation of reimbursement form (EOR). The EOR represented that the claim had been reimbursed pursuant to the First Health Network. Roche contends that TIC was not entitled to take the PPO discount and is liable to her for the difference between her usual and customary rate and the PPO rate TIC paid. Roche advances the alternate theories of breach of contract, unjust enrichment, and violation of the Illinois Consumer Fraud Act on behalf of herself and others similarly situated.

TIC contends that the Court should dismiss the complaint in its entirety because Roche's claims are barred by the exclusive remedy provision of the Illinois Worker's Compensation Act. TIC also asks the Court to dismiss the contract claims because no valid enforceable contract exists between it and Roche. TIC contends that Roche's fraud and unjust enrichment claims are improperly based on contractual obligations, and that Roche's claim under the Illinois Consumer Fraud Act is time barred and deficient. The Court examines each of these arguments in turn.

ANALYSIS

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam ) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.2007). The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.2007)(quoting *Twombly*, 127 S.Ct. at 1965 (2007)) (internal quotations omitted).

The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S.Ct. at 1965. Moreover, the Court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim." *R.J.R. Services Inc. v. Aetna Casualty and Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989). However, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S.Ct. at 1969 n. 8.

I. **Illinois Workers's Compensation Act**

TIC argues that the Illinois Workers's Compensation Act (IWCA) bars all of Roche's claims. "The [IWCA ] is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment. Accordingly, the Act imposes liability

without fault upon the employer and, in return, prohibits common law suits by employees against the employer." *Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E.2d 1222, 1225 (Ill. 1990). According to TIC, because Roche's patient was injured in an accident falling within the IWCA and because his treatment was covered under a workers's compensation insurance policy, Roche's action is barred by the exclusive remedies provision of the IWCA. In relevant part, the IWCA reads:

> No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury.
> 820 ILCS 305/5(a) (exclusive remedy provision).

TIC argues, "Absent her patient's workplace injury, the policy would not apply, and Plaintiff would be entitled to no payment from [TIC] at all. Accordingly, Plaintiff clearly is a person 'otherwise entitled to recover damages' for that injury under the exclusive remedy provision of the [IWCA]." However, Roche does not contend that she is entitled to "damages" resulting from her patient's injury. Roche's allegations center on TIC's misappropriation of First Health PPO discounts to which it was not entitled. Far from being central to the action, the workplace injury suffered by Roche's patient is collateral to the instant dispute.

In support of its position, TIC cites *Foster McGraw Hospital v. Bldg. Mat'l Chauffeurs, Teamsters & Helpers*, 925 F.2d 1023, 1024 (7th Cir. 1991). In *Foster*, a hospital treated an injured patient who later died. *Id*. The patient had assigned the hospital his rights under both his union's welfare plan and his employer's workers's compensation plan. *Id*. There was some

6

question as to whether the patient was injured in the course of his employment or not. *Id*. The union's plan denied coverage, asserting the injury occurred while the patient was on the job. *Id*. The workers's compensation plan denied coverage, asserting the injury occurred off the job. *Id*. The hospital brought suit only against the private insurer. *Id*. The Seventh Circuit, in explaining why the hospital had not brought the suit as an "inverse interpleader," stated, "Illinois law does not allow a provider of medical care to sue a workers' compensation carrier," and cited to the exclusive remedy provision laid out above. In a parenthetical following the citation, the Seventh Circuit clarified that health care providers are not among those specified in the IWCA as being able to recover under the Act for damages for injuries. However, this should not be taken to mean that workers's compensation carriers are immune to all suits from health care providers. Here, Roche is not asserting her patient's right to insurance coverage under the IWCA. TIC has already acknowledged that Roche's patient had a right to insurance coverage. Instead, Roche's action is based on her right to compensation for the covered services she rendered. As such, the action is not precluded by the IWCA, because it does not fall within the ambit of the IWCA. *See, Piller v. Weippert*, 633 N.E.2d 174,176-77 (Ill.App. 1994); *Oak Park Hospital v. Smuda*, 574 N.E.2d 804 (Ill.App. 1991).

Further confirming the Court's view that the Illinois legislature did not intend the IWCA to preempt all claims against insurers by healthcare providers, the IWCA states:

> Nothing in this Act shall prohibit an employer or insurer from contracting with a
> health care provider or group of health care providers for reimbursement levels
> for benefits under this Act different from those provided in this Section.
> 820 ILCS 305/8.2(f).

Because PPO contractual arrangements do not fall within the ambit of the IWCA, it stands to reason that actions alleging breaches of those contractual arrangement also fall outside of the

7

Act. Therefore, the exclusive remedies provision of the IWCA does not bar Roche's claims merely because the patient treated by Roche suffered a workplace injury.

TIC contends that if the Court does not dismiss Roche's claims, it should at least refer them to the Industrial Commission set up by the IWCA. The courts and the Industrial Commission have concurrent jurisdiction over IWCA claims. *Employer's Mutual Cos. v. Skilling*, 644 N.E.2d 1163, 1165 (Ill. 1994). Courts should refer claims to the Industrial Commission when the Commission's technical expertise would help resolve the controversy. *Id*. However, issues of law, such as contract disputes, are "the particular province of the courts" and need not be referred to the Industrial Commission for initial adjudication. *Id*. For the instant dispute, the Court has determined that the claims are not properly characterized as IWCA claims. Furthermore, the Complaint raises questions of contract interpretation and consumer fraud, issue which are the particular province of the courts. Accordingly, the Court will not refer Roche's claims to the Industrial Commission for initial adjudication.

## II. Count I - Breach of Contract

TIC argues that the Court should dismiss Roche's breach of contract claims because Roche was neither a party nor a third-party beneficiary to the Payor Agreement, the terms of which Roche alleges TIC breached. Roche counters that the Provider Agreement and the Payor Agreement must be read together, as one instrument. Therefore, Roche argues, she is a party to the contract she alleges was breached.

In support of her position, Roche points to *Baylor University Medical Ctr. v. Epoch Group, L.C.*, 340 F. Supp. 2d 749 (N.D. Tex. 2004). *Baylor* presented a factual scenario very like the one before the Court. There, the plaintiff, a healthcare provider, entered into a contract

with a subscriber service via a Subscriber Services Agreement. *Id*. at 753 The subscriber service then contracted with the defendant via a Payor Agreement. *Id*. The plaintiff sued the defendant for breach of contract. *Id*. The defendant moved for summary judgment, arguing that there was no contractual relationship between itself and the plaintiff. *Id*. The plaintiff argued that the court should construe the documents as if they were part of a single, unified instrument. *Id*. at 754. The court determined that the agreements together constituted a single unified contract between the parties. *Id*. However, the Baylor court rested its holding on the fact that Texas law permits multiple instruments to constitute a single agreement even when the instruments are executed at different times, and "even if the instruments are not between the same parties." *Id*. By contrast, another district court concluded, on similar facts, that "the law in Mississippi does not support the plaintiff hospital's argument that all of the contracts between the various entities create a single binding contract." *Baptist Memorial Hospital - DeSoto, Inc. v. Crain Automotive Inc.*, 457 F. Supp. 2d 702, 704 (N.D. Miss. 2006). Applying Illinois law, the Court concludes that Roche cannot maintain her breach of contract claims.

A. **No Contract Between Roche and TIC**

Under Illinois law, "different instruments executed by the same parties, at the same time, for the same purpose, and in the course of the same transaction, are regarded as one instrument and will be read and construed together." *Illinois Housing Development Authority v. LaSalle Nat'l Bank*, 478 N.E. 2d 772, 775 (Ill. App. Ct. 1995) (citing *Thread & Gage Co. v. Kucinski*, 451 N.E.2d 1292 (Ill. App. Ct. 1983)). However, "two agreements executed by different parties cannot be regarded as one instrument." *Id*.; *Susmano v. Associated Internists of Chicago, Ltd.*, 422 N.E.2d 879, 883 (Ill. App. 1981); *Ill. Hous. Dev. Auth. v. LaSalle Nat'l Bank*, 487 N.E.2d

9

772, 776 (Ill. App. 1985).

Here, the Provider Agreement was entered into in March 1996 and the Payor Agreement was entered into in November 1999, over three years apart. The only party in common to the two agreements is First Health, which is not a party to the case at bar. Although the two agreements refer to the existence of each other, neither of them identify who will be party to the other. Additionally, each agreement states that the written provisions of that agreement constitute "the entire agreement between the parties," and each agreement constitutes a valid, enforceable contract on its own. In sum, Roche asks the Court to read documents executed years apart together in such a way as to form a contract between parties who were unaware of the identity of each other at the time the documents were executed and in contravention of the express language of the documents. The Court concludes that neither the law in Illinois nor the language of the agreements support Roche's argument that the Provider Agreement and the Payor Agreement together constitute a contract between the parties.

### B. Roche Does Not Allege Third-Party Beneficiary Status

In Illinois, one who is not a party to the contract she seeks to enforce must sue under a third-party beneficiary theory. *Jones v. Chicago HMO Ltd. of Illinois*, 730 N.E.2d 1119 (Ill. 2000). Third-party beneficiary law allows a non-party to a contract to sue for breach of the contract when the contract is entered into for the direct benefit of the non-party. *Olson v. Ehtheridge*, 686 N.E.2d 563, 566 (Ill. 1997). "The express language of the contract and the surrounding circumstances at the time the contract was executed determine whether or not the contracting parties intended to benefit a third party directly." *F.W. Hempel & Co., Inc. v. Metal World, Inc.,* 721 F.2d 610, 613 (7th Cir. 1983) (*citing Carson Pirie Scott & Co. v. Parrett*, 178

10

N.E. 498, 501 (Ill.1931)). Roche does not allege that she is a third-party beneficiary to the Payor Agreement. Indeed, as TIC points out, the Payor Agreement expressly disclaims any intent to create any third-party beneficiary status or any rights in any person not a party to the contract. Because Roche does not allege third-party beneficiary status and because she is not a party to the contract whose terms were breached, the Court dismisses Count I of the Third Amended Complaint, alleging breach of contract.

### III. Count II - Unjust Enrichment

TIC contends that the Court should dismiss Roche's claim that TIC was unjustly enriched by retaining improperly appropriated PPO network discounts because the claim is based on an alleged express contract. Roche counters that she has successfully pled the unjust enrichment claim in the alternative. Plaintiffs are permitted to plead alternative, even inconsistent, theories of recovery. Fed. R. Civ. P. 8(d). Therefore, the mere fact that Roche alleges both breach of contract (based on an express contract) and unjust enrichment (based on an implied contract) dealing with the same subject matter is not grounds for dismissal. "Nonetheless, while plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract, which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel." *The Sharrow Group v. Zausa Development Corp.*, 2004 WL 2806193 (N.D. Ill. 2004) (listing cases); *See also, Canadian Pacific Railway Co. v. Williams-Hayward*, 2003 WL 1907943 at *5 (N.D. Ill. 2003); *Team Impressions, Inc. v. Chromas Technologies Canada, Inc.*, 2003 WL 355647 at *4 (N.D. Ill. 2003); *SMC Corp. v. Peoplesoft USA, Inc.*, 2004 WL 2538641 at *3 (S.D. Ind. 2004); *Cole-Haddon, Ltd. V. Drew Phillips Corp.*, 454 F.Supp.2d 772, 777 (N.D. Ill. 2006); *People ex rel.*

*Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165 (Ill. 1992).

Here, Roche's allegations of unjust enrichment include allegations that an express contract governs the relationship between the parties. First, Roche incorporates the allegations of her breach of contract count into her unjust enrichment count. Second, Roche alleges that TIC was unjustly enriched when it "failed to provide the bargained for exchange to Plaintiff and the Class by retaining the PPO discounts." This is merely a reiteration of Plaintiff's earlier breach of contract claim. Therefore, the Court finds that this count was not properly pled. However, the Court will allow Plaintiff an opportunity to correct the deficient pleading. Therefore, the Court dismisses Count II without prejudice. The Court grants Roche 30 days from entry of this Order in which to file an amended complaint properly pleading unjust enrichment.

### IV.     Count III - Illinois Consumer Fraud Act

Roche alleges that TIC violated the Illinois Consumer Fraud Act (ICFA) when it sent Roche EORs in which TIC purported to be entitled to the First Health PPO discount knowing that it had not provided steerage in exchange for the discount. TIC contends that Roche's claims are barred by the ICFA's statute of limitations, that they are improperly based on an alleged breach of contract, and that they are insufficient as a matter of law.

#### A.     Statute of Limitations Defense

As an initial matter, TIC asserts that Roche's claim is barred by the ICFA's two year statute of limitations. A statute of limitations defense is an affirmative defense that the plaintiff's complaint need not address. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Only if a complaint that otherwise states a claim "admits all the ingredients of an impenetrable defense," may be dismissed under Rule 12(b)(6). *Id*. Such is not the case

here. Roche alleges that the EOB she received from TIC disguised her injury such that the statute of limitations was tolled. Therefore, Roche's Complaint does not admit all the elements of an impenetrable statute of limitations defense, and it will not be dismissed on that basis.

### B. No Allegations of Unfair or Deceptive Practice

The ICFA prohibits the use of unfair or deceptive business practices, "including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact. . . ." 815 ILCS 505/2. The elements of an ICFA action are: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). Simple breach of contract, that is "the mere fact that the defendant promised to do something and then failed to do it," is not actionable under the Consumer Fraud Act. *Id*. at 843 (*citing Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988 (Ill. 2000)).

Here, Roche realleges that TIC claimed it was entitled to the PPO discount, knowing that it was in breach of its contractual obligations. While this may be "unfair" in the colloquial meaning of the word, these allegations cannot support an ICFA claim. Roche also alleges that "TIC's operation of a 'silent PPO' oppressively reduces the reasonable reimbursement of healthcare providers without the reciprocal steerage in violation of public policy." In other words, the fact that TIC purports to be a part of a PPO but does not provide steerage to the providers of that PPO is an unfair or deceptive practice, because without steerage there is no

13

legitimate PPO.

In the context of the Lanham Act, Seventh Circuit roundly rejected this contention. *First Health Group Corp. v. BCE Emergis Corporation*, 269 F.3d 800, 805-6 (7th Cir. 2001). In *First Health*, Plaintiff argued that Defendant UP & UP was falsely holding itself out to be a PPO even though it did not steer its insureds to network providers. *Id*. at 801. The Seventh Circuit distinguished between "directed PPOs," those that steer patients toward network providers, and "non-directed PPOs" that do not. *Id*. at 804. Both may properly use the term "PPO" or the phrase "preferred provider network." *Id*. at 805. Here, TIC belongs to a PPO network which allegedly employs the business model of a "non-directed PPO." Because the use of the term PPO is an accurate description of such a business model, TIC has not engaged in fraudulent conduct by purporting to be a member of a PPO.[2]

To the extent that Roche asserts that Illinois law requires a PPO payor to provide steerage, this argument, too, must fail. The Illinois Health Care Reimbursement Reform Act of 1985 provides that:

> (b) An insurer or administrator may:
> (1) enter into agreements with certain providers of its choice relating to health care services which may be rendered to insureds or beneficiaries of the insurer or administrator, including agreements relating to the amounts to be charged the insureds or beneficiaries for services rendered;
> (2) issue or administer programs, policies or subscriber contracts in this State that include incentives for the insured or beneficiary to utilize the services of a provider which has entered into an agreement with the insurer or administrator pursuant to paragraph (1) above.

---

[2]In contrast, if Roche had alleged that TIC took the PPO discount in the absence of an agreement with the PPO network, she may have properly stated a claim for consumer fraud. *See, Roche v. Country Mut. Ins. Co.*, 2007 WL 2003092 (S.D.Ill. 2007). However, here, Roche acknowledges that TIC was a payor in the First Health PPO network.

14

215 ILCS 5/370i

The statute clearly allows PPOs to provide incentives for patients to use certain providers. However, the language is permissive only, not mandatory. As to non-incentive steering mechanisms, such as provider panels, the statute is silent. Furthermore, the regulation cited by Roche that requires PPO administrators to register with the Director of Insurance is not applicable to TIC, because Roche does not allege that TIC is a PPO administrator. Therefore, even accepting as true all factual allegations in the Complaint, Roche has not alleged any conduct by TIC that violates Illinois law or policy or that constitutes an unfair or deceptive practice. Therefore, Count III fails to state a claim under the ICFA. Accordingly, the Court dismisses Count III.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for a Hearing (Doc. 47), **GRANTS** Defendant's Motion to Dismiss (Doc. 38), and **DENIES as moot** Defendant's Motion to Strike or Dismiss Class Allegations (Doc. 39). The Court **DISMISSES** Counts I and III **with prejudice**. The Court **DISMISSES** Count II **without prejudice**. The Court **GRANTS**

Plaintiff **leave to amend** Count II of her complaint **within 30 days** from the entry of this Order. Failure to file an amended complaint will result in dismissal of this action. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of this case.


**IT IS SO ORDERED.**
**DATED: July 24, 2008**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
